Good morning may it please the court my name is Michael Gosler and I represent the appellant Alaska Village Electric Cooperative Inc. This case involves an all risks builders risk insurance policy on which AVEC made a claim for faulty workmanship. The district court heard cross motions for summary judgment and dismissed AVEC's claims. A little bit of background I think is important in understanding and putting this case in context. In 2010 AVEC through a subsidiary made a decision to have two barges and two tugboats constructed to haul fuel oil in northern Alaska where AVEC distributes fuel to the remote villages. AVEC engaged the firm Bauer Moynihan & Johnson and specifically Jim Bauer to advise it with respect to the construction contract and selection of a boat building company. The key issue in the negotiations over the contract involved the insurance that would be required and specifically Mr. Bauer advised AVEC that it should request a builders risk policy which excluded addendum number two and the purpose for the request was that the most common problem that arises in the construction of vessels is faulty workmanship. But it seems to me that the district, this seems to me to be where the fault line is in the case. The district court said yes, addendum number two was supposed to address the exclusion of faulty workmanship but it is excluding the relevance of faulty workmanship not with regard to the cost of fixing the faulty workmanship. And so it isn't obvious that or I would like to know why it's obvious that by having a concern about including coverage for faulty workmanship that necessarily means having a concern for coverage of the workmanship, replacing the workmanship itself as opposed to the consequences of the workmanship. The answer to that question is that that concern, the concern about repairing faulty workmanship was the specific reason why addendum number two was excluded. Well, reading through everything, the only evidence I saw of that, direct evidence of it as opposed to people talking around each other, which may have been what was happening, was a statement by a prospective underwriter saying, well, why should we be assuring for what's essentially a warranty question. But aside from that, all of the discussion seemed to be about, yes, you wanted to cover faulty workmanship but no one was ever specific about for why. Your Honor, I think that's not correct. And why not? Show me an example. The examples are, so AVEC, I'm sorry, Zurich filed for summary judgment strictly on the basis of the Wall Street and Trinity cases. There's no discussion about the negotiations or the intent of the parties. AVEC responded by raising the issue under Washington law that you have to look at the context and you have to look at what the parties were intending. And in doing so, we did two things. We submitted a declaration from Chris Bower, who explained how he took it to market, the request to delete addendum 2, the comments from both, I think it was CNA and Compliment Marine who declined to quote because they didn't want to take on the additional risk. And in addition, we submitted the declaration of Jim Bower. And the Bower declaration is significant in two respects. First, he describes the evolution of builder's risk policies and specifically addendum 2 and explains that the industry does in fact understand the risk that's being taken if you delete addendum 2, namely that you do assume responsibility for faulty workmanship. But more specifically, Mr. Bower describes a specific conversation that he had with Linda Windham, who was with one of the subscribing underwriters. I think it was submitted a declaration in response to our most cross motion for summary judgment, where she stated that quote, I did not agree and was not asked to provide coverage for the cost of repair for defective work by the yard. And then she went on to say neither Mr. Bader, Ms. Collins, nor Mr. Bower asked that of us, and I certainly did not agree to do so. By contrast, in Mr. Bower's declaration, he states that to the contrary, as I specifically testified at paragraph 10 of my first declaration in this case, during the underwriting process and prior to Ms. Windham's agreement to commit ISI as a subscribing underwriter on the policy, Ms. Windham called me to discuss the builder's risk insurance for this project and specifically the request to omit addendum number 2. I specifically told her that the two most common risks of shipbuilding, faulty workmanship and faulty vessel construction, are excluded under addendum number 2 and that Sneed wanted addendum number 2 removed so that there would be coverage under the builder's risk policy for claims based upon faulty workmanship. I still don't think any of that goes to my point. I understand that yes, they wanted to have, and it was the district court's point. Yes, they didn't want to exclude the risk based upon faulty workmanship, but what was the risk? Was the risk that injury to something, to some other part of the ship, or to the ship as a whole, or was it the workmanship itself? The workmanship itself. But nothing that you've said so far says that. Well, I think that's certainly when Mr. Bauer says that one of the two most common risks, faulty workmanship and faulty vessel construction, are excluded. Right. That's true. And he wanted it removed so there would be coverage for claims based upon faulty workmanship and production procedures. Right. Okay. But that doesn't tell you whether the claims are claims that because of faulty workmanship, you know, the ship blew up or whether it was because of faulty workmanship, you should pay for fixing the faulty workmanship. Well, there is case law that provides or states that the cost to cure an injury to something is an all risks policy. And I cited two cases to that effect. The General Mills case out of Minnesota, which involved the manufacture of oat seeds and the provision of an insecticide, which turned out to be not FDA approved. And so that was a final product that was never in a proper state to begin with. Well, are we bound by Washington law here? We are bound by Washington law. Well, didn't the district court rely on a Washington Court of Appeals case that said that this clause relates to damage that's caused by external force resulting from faulty workmanship and not repairing the workmanship itself? Yes, Your Honor, it did. And this is what's important about that. In the Walston case, the court was very specific to say that absent mutual agreement on the meaning of the language, the words will be given their plain ordinary meaning. Zurich argued that the plain and ordinary meaning had to be what was from the Walston decision because that was the conclusion of it. And so when you have a specifically negotiated policy, as opposed to just having a standard form applied with no discussion about what was required, the situation is that you look at what the parties asked for as opposed to what the existing standard might be considered to be under the Walston decision. And I think significant in this regard is the Frank Galluccio construction case versus King County. That's significant. But the Spratt case that we decided, I think, is also important. Well, I'm not sure. I thought you were arguing that there was some specific agreement here that those words would be given a different meaning. I didn't see any evidence for that at the time. Well, I think that certainly the inferences have to be drawn in favor of the non-moving party on a summary judgment. And in this case, Mr. Bower's declaration testimony about how the industry understands the exclusion of addendum 2 to provide coverage for the repair of faulty workmanship, I think, also provides a basis for the intent was that the cost of curing faulty workmanship would be covered. Is there standard addendum 2? Everybody understands what it says. It only says one thing. Is that right? Addendum 2? Yeah. Yeah. Addendum 2 is quoted in our brief. But in essence, it says that, addendum 2 says that underwriters shall not pay for any loss, damage, or expense caused by or arising in consequence of faulty workmanship and then faulty production or assembly procedure. But does it say, the one that I'm looking at says, unless resulting in destruction, deformation, breaking, tearing, et cetera. Is that in the current addendum 2? I'm not sure. I just summarized the salient language here in my It seems extremely relevant to my earlier point and to the district court's point, unless language is in there or not. Well, the addendum 2 says, any loss, damage, or expense caused by or arising in consequence of. And that's why I got into the dictionary definitions of apply. So I looked at what the dictionary definitions of damage are. And those definitions include loss of use, loss of functionality, et cetera. And in this case, that's exactly what we have. The product, the holes with the defective welds had hairline fractures and were unusable, uncertifiable by the ABS. And as such, they constitute damage under a common dictionary definition, which Washington law says is what you're supposed to apply. Then I think it's also significant when you look at the reason I've referenced the Frank Coluccio case is that involved a claim by the construction company against King County for failure to purchase a builder's risk insurance policy with all risk cover as required by their construction contract. And the court noted, and I think this is important, King County could only escape liability for the losses suffered by proving at trial that every all risk builder's risk insurance policy available for purchase, without exception, would have excluded the losses claimed by Frank Coluccio Construction and DBM. To do so, King County had to prove both that all such policies contain faulty workmanship exclusions and that the losses suffered by FCCs and DBM fell within the provisions of the exclusion. And then he goes on to say, however, a preeminent treatise indicates that it would have been impossible for King County to make such a showing at trial that the policy has been held to cover damages occasioned by the insurer's poor workmanship, and then it goes on to say, and the expenses involved in replacing broken pipe and repairing leaking collars improperly installed by the builder's employees. That's a specific inclusion of cost of repair. And that's significant because the reference to the broken pipe case is the Northern District of Virginia, which is the Associated Engineers case. And so I think the court, eight years later, this Frank Coluccio case was decided by Division I in 2007. The Wallstein case was decided in 1999. And so I think this is a specific expression of the ability of parties to sell contract. And so that is why we believe that the policy as described in this case would have been possible to cover damages  to be the case. So there's no factual dispute as to whether the cause, the problem here, was the wells themselves that they were trying to get covered for. In other words, there's some discussion of the fact that there were cracks in the hull. But I gather that what there were actually cracks in were the wells themselves. Is that correct? That's correct, Your Honor. I'll reserve the last minute and 15 seconds. Okay. Thank you. May it please the Court, I'm Michael Gillette, representing the Zurich parties. Judge? It's the addendum that we're talking to about the one on ER 39. There's a cite to ER 39. There's a cite to ER 124. I don't know which it is. But you cited your brief to ER 39. Is that the right one? The last time I looked, yes, ma'am. Right. Because that one says, subject to the provisions of exclusion being in the event of, no, no, wait, faulty work which results in the installation or use of improper or defective materials, unless resulting in destruction, deformation, breaking, tearing, bursting, holing, or cracking, or any other like conditions. It's also cited in page 21 of my brief, yes. All right. All right. And 19, actually, is what I'm reading from. So, if it's, given the unless, doesn't that largely preclude the instruction that the district court put on it? I.e., the unless seems to say that if the faulty workmanship causes destruction, deformation, breaking, tearing, bursting, holing, or cracking of the vessel, then the addendum doesn't apply. To tell you the truth, Judge Berzon, I'm not sure I'm following the question. I beg your pardon. The situation that the judge faced was that he didn't have a, he didn't have a vessel which had burst, been twisted, or anything else had happened to it. And so, from his point of view, the absence of. Right. But the question is whether the addendum applies to the vessel or to consequential losses from it. I mean, what he said that was most persuasive to me was, well, it isn't redundant, and it isn't, it doesn't really throw any light on the, on the main clause. Right. Because all that's being taken out is consequential losses. But, but there seems to be an exception to the addendum for consequential losses. The funny thing is, I read it the same way he did, and so I'm trying to, I'm trying to come around. Well, what does the unless mean? The, I thought, I thought the unless was intended to, to demonstrate that if, because it wasn't clear until the addendum was adopted, unless the, the damage was to the vessel in terms of the vessel's usefulness, period, even in its defective state. Even if caused by faulty equipment. Yeah. But if, but if the vessel, if the vessel, which is faulty, is put to sea and falls apart, the question, the argument was, from the point of view of insurance companies, at least they could make the argument, that the vessel wasn't covered even then, because the only problem was defective workmanship. And they were answering that question by saying, no, no, the defective workmanship continues to be a risk that we don't cover. But if the ship falls apart, we'll pay for that. But, but then, the addendum is just redundant of the way that you're reading the main clause. The first part of it is redundant, but it's only a way of clearing one's throat to explain what it is they will cover. There is a tendency in, in this line of work, as I understand it, and I'm not going to claim to be the world's greatest expert on, on marine insurance. But there is a tendency in the insurance period to use a belt and suspenders. And I think the first phrase to which you're referring, Judge Berzon, is simply a way of paving the way to explaining what we will cover with respect to faulty workmanship. It's not intended to say that, and we also covered faulty workmanship before. I think that's the way the judge read it. It's the way I understand it. And it's also the way the case law was. One of the curious things about this case is that Mr. Bauer, who's supposed to be the expert on this subject, gives advice to Mr. Gosler's client and, and supplies an affidavit to the effect that the industry understands that faulty workmanship is covered. But every case, every case, including one from Washington where Mr. Bauer practices, every case established that that wasn't, that wasn't true. And Mr. Bauer may find himself in a position that a lot of us find ourselves in when we claim to have been experts but haven't been paying attention to the case law, that just simply was not the law. The law was the Wolstein case. How do you read both Wolstein and, what is it, Colucci? Colucci. Colucci. How do you read them together? I think, I think they're easy to read together. In the first place, Colucci is not a case in which, in which negligent, there was a negligence on the part of the person who constructed the hole. The accident was caused by an outside force. And so the only question was whether Seattle could have purchased, or King County could have purchased, a policy which would have covered that. And the answer is sure they could have. They certainly could have purchased that, or at least they didn't prove that they couldn't have. And it was their burden to show that there was no such policy available anywhere in the known world. Because they violated the contract, it required them to purchase such a policy. Let me ask you this. Does Wolstein itself fully support the district court's judgment? Yes. As a matter of law? As a matter of law, yes, sir. My understanding is that the court was required to follow Washington law, and Wolstein is the authoritative statement on what this marine insurance policy whole risk provision means. Well, shouldn't the court also take a look at what the party's intended here? As I've indicated in the cases I've quoted to you, you can't use the party's intent, even if you could show it. And Judge Berzon's inquiries of Mr. Gossler established that Mr. Gossler can't show it. But even if you could show that the parties had talked about doing something else- That might be a factual kind of dispute, right? No, her point was that the evidence that Mr. Gossler's offered shows people talking past each other. It never shows an agreement, and it's not subject to being construed as an agreement. But even if you could show an agreement, we'd have the interesting problem of the parties having agreed on something that the words of a policy then don't say. Now, you may have a mistake of fact or a mistake of law that justifies undoing- Well, what exactly is, and first of all, is there a difference between, I gather, do you agree that Washington law applies? Oh, sure. You do agree that Washington law applies? Yeah. Okay, so we don't have a dispute about that? No. Okay, so under Washington law, what is this set of law that seems to say that you can use the context to inform the meaning of the words at the initial stage? As I read the cases, they're intended to indicate that even if words could be understood in a particular way, standing alone with no help, you can look to the context to figure out what was the party referring to. Clearly, the language of this coverage clause is not, they're all pellucid. I mean, it doesn't, it's a little hard to know what is being covered. It talks about all, what is it, all physical damage to or loss of the ship, right? Lost or harmed. Yeah, lost or harmed. The ship is either lost or harmed.  So it seems to me that with respect to all the- And it clearly is meant to be covering a non-finished ship. I mean, the whole point of this thing was, I mean, the period that it was covering was the period that it was being constructed. If a crane- So it can't be a completed ship that it's talking about. No, if a crane fell on a ship that was under construction, the provision would apply. But it is intended to say that if what's produced is a defective ship because of the way it was constructed, and it turns out that it's defective in exactly the way this one turned out to be defective, so that it has to be repaired to the tune of a million two. Well, it's your position then that if the workmanship, without the addendum, if the workmanship caused the engine to blow up and the ship to get destroyed, would that be covering everything but the workmanship itself? Yes. So what exactly is the difference then? Because you're not dealing with a finished ship. I've, you are dealing with a finished ship. The SNEAD proffered it and said, okay, we're ready to go. We just have to get the wells x-rayed. But you clearly didn't have to be under this provision. That's what I'm asking you. I mean, the provision clearly covered things that happened in the middle of the building, right? Yes, I agree. All right, so if in the middle of the building you don't have, you have half a ship, you don't have a usable ship, and the workmanship in one part of the ship causes a problem in another part of the ship. Then the point I'm trying to make is this, and I, just to try to explain myself, that if you have a defective ship and there is a claim for that, what is it that the insurance company would be required to pay you for? It's a defective ship. And even if there's harm from the outside, the argument would be, we only have to pay you for what you had, which was a defective vessel. But the point I'm trying to make in any event is, without Addendum 2, we're not in a situation where we're trying to figure out what the scope of Addendum 2 is or how it expands. But the argument about why the language is from the Fifth Circuit opinion, from Trinity and from Wallstein, seems to be that when you talk about damage to the ship, it has to be, or loss of the ship, there has to be a ship first. But here, there certainly wasn't a ship first. I didn't get the impression that was the case, and that's certainly not the case with Wallstein, where the Lady J, the yacht, was not completed. So the Washington court didn't think that. The Washington court. So what is so clear about this language when it isn't, the loss has to be to a ship, which may not be a finished ship. So what's the difference between, that's in the language. How does the language tell you that there's a difference between one part injuring another part and one part being defective itself? It's what it is that the policy promises to pay for, loss or damage. Okay. Loss or damage. As the ship was presented, as the shipbuilder presented the ship in the condition it was in, nothing had been lost and nothing damaged. The ship was the falsely welded ship. Hadn't been lost. Hadn't been damaged. Just wasn't much good. But if the words are to mean something, with respect, that's what they need to mean. And that was what the Trinity Court found, the American Shipbuilders Court found, and that's what the Wallstein Court found. And the Wallstein Court, at least, I thought, was declaring Washington law. And even if one could see another argument, another way to deal with it from the beginning, I think, with respect, the Wallstein Court settles it. I tell you honestly, that seems the most logical way to read loss or harm anyway. Because loss or harm implies you had something that was better and now it's damaged or gone entirely. So you would say, even if you take the facts as they portrayed them, that what they thought they were getting wouldn't have benefited them in any event. Yeah. And that's kind of a funny problem. Because when someone, when an expert comes to you, and this is a broker doing this, this is not the average person off the street. They come to you and say, I don't want that policy with addendum two. And you say, but all God's children issue it with addendum two, and I'm not sure we want to. And then they think about it and they say, okay, we'll issue it without addendum two. That doesn't mean that they agree with what you think the policy without addendum two means. But certainly several underwriters thought it meant something, because they weren't going to issue it without it. I beg your pardon? The industry seems to think it means something. Is your argument that it means nothing? No. My argument is that it's, in one sense, and by the way, I've tried to dope this out a lot, not just with myself, but with people who actually know something about the subject. And the sense of it is, it's principally a belt and suspenders situation. So it means nothing. That's what belt and suspenders means. It doesn't do anything. It doesn't do much. I think it does one thing. I think it makes clear, when the other policy didn't, what the status is of the ship bursting, breaking up, twisting, or falling apart. Although I should have thought that if we're going to stick strictly with the words loss or harm, that that might very well have been covered anyway. But the industry made it clear by creating addendum two. But I'm not sure what addendum two is. I mean, on your reading of loss or harm, the dialogue we had before, it had to cover that. Right. And you asked me what I thought it meant, and I told you. So your argument is it's totally redundant? If I were construing it, I would treat it as totally redundant. But the industry clearly didn't think so. They put it in here in 1970, whatever it was, because they thought it made a difference. They did, and then they got Trinity and American Shipbuilders and Wolstein and the other cases I've cited, and it turned out they didn't need it. But I've never known an insurance company to give up on an addendum just because it may not have had any point anymore. That would be a news headline. Well, in any event, your argument is that they can't, by taking out something, get more than they took out. Well, my argument is twofold, Judge Pius. First, my argument is they didn't take anything out because it was never in. I'm shorter. He's taller. I do apologize. I have not had the privilege of being before any of you before, and I also apparently can't read, so my apologies. But the answer is that they simply didn't take anything out because nothing was ever in. And what they issued meant whatever it meant, because one side said, I want it, and the other side says, here it is, and here's the premium for it. And what they got doesn't cover what they're now complaining about. That's not what you're saying now is not what the district court said. He read it as accomplishing something, but not what they thought it accomplished. Yeah, but actually, I think he said both things. I think he said, one, this is what the policy means as it's issued, and then secondly, he had a view with respect to Addendum 2, which I'm not sure that I have to agree with. And I'm not sure that I have to be right with respect to my view of it either, because it seems to me that it's the policy that they got that they have to live with. And I realize every insurance lawyer from the beginning of the world has made the same argument as equally irritable for having done it, but I think that's the honest, straightforward, and legally correct argument. Okay. And I thank the court for its attention. Thank you. See, I believe you had a few minutes for a rebuttal. A minute and 12 seconds. Several points. The belt and suspenders approach is not how Washington case law interprets policies of insurance. We cited the Churchill case, which is a very analogous situation where the standard policy form had an exclusion for mold. The exclusion for mold was deleted, and the question then became whether the policy covered mold damage, and the court said you have to give meaning to the actions of the parties. So here, in removing addendum two, it meant something. Number two, in the Frank Coluccio case, that's significant because the court had to first determine the legal standard that King County had to meet. That's why it made the determination that it had to prove that all policies containing faulty workmanship exclusions. And it went on to quote the treatise that I referenced earlier that the cost of repairing damage to the product itself can't be covered under that particular. Let me ask you one question. What do you, if we were to agree with your position that there should be a remand to the district court, what do you envision happening in the district court on remand? Well, we would put on the testimony in detail about the negotiations of the parties, what was requested by the broker, details, probably more detail on the conversation. And what finding would the district court have to make in order for you to prevail? The district court would have to find that the parties intended to cover damage, or the cost of repairing damage to faulty workmanship to the product itself. And that's what this policy, that addendum two would cover? Yes. And. Or covers. That's right. So your position is that if they agree to take out the exclusion for mold, that they not only get mold, but they also get termite coverage. If they can agree to something by taking it out that is more than what they're taking out. I don't. Does that make any sense? No, I don't think they were taking out. Our position is that faulty workmanship is covered. The cost of repairing faulty workmanship is covered absent the inclusion of this addendum. And so by deleting the addendum, that coverage exists. But in doing that, are you arguing that the addendum excluded it? Yes. Now, here's the problem with, I mean, just conceptually with your position. You say that faulty workmanship means negligence, but of course it doesn't mean negligence. It could be just purposely faulty workmanship. If somebody goes out to, I mean, if he, in this instance, apparently he was supposed to use certain certified people and he didn't use those certified people. That isn't negligence. That's a warranty problem. And so to have coverage for somebody simply flaunting the contract seems like a mighty strange kind of coverage. I think the case law requires that it be the result of negligence. And that a fortuitous event, such as the negligence of your employees, gives rise to coverage. How can that be? If there's no case covering faulty workmanship, there's no case saying that it has to be negligent faulty workmanship. Well, I think the two cases that I cited, the Minnesota and the California cases, do involve negligence. And certainly that would be the position here is that it was negligent. Well, the argument here, as I understand it, is that it wasn't negligence. He didn't do what he said it was going to do. No, the welders at the shipyard have failed to. But supposedly they weren't certified welders and so on. They weren't who they were supposed to be. They didn't follow what they were supposed to follow. They were certified welders. They simply failed to follow the specifications of the contract. And in doing so, were negligent. And as a result, there was damage. Well, but on your theory, I don't understand why it couldn't just be, you know, somebody says they're going to give you iron, they give you tin. Why isn't that faulty workmanship on your theory? In other words, if the contractor contracts to give you iron, I'm not even talking about anything particular, but contracts are going to be made of iron, in fact, it's made of plaster. Why wouldn't that be covered on your theory? Or would it be covered in your theory? I think it would be. Because the failure to follow the specifications would be negligence. But I think there has to be something. You really think somebody's going to insure against somebody just blatantly not doing what he said he was going to do? Well, I think by definition, when you sign a contract agreeing to do something, you're saying I'll do it. And if you then fail to comply, if it's intentional, then that's going to be excluded under intent, fraud, et cetera, principles of insurance law. But if it's simply negligence on the part of an employee, and I'm over time, Your Honor, if it's simply negligence on the part of the shipyard, then that would, in fact, be covered. Anyway, I'm out of time. Thank you very much. Thank you. Thank you, counsel. We appreciate your argument in this interesting insurance case.
judges: Schroeder, Paez, Berzon